UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
CHARLES F. ANDRIS,
        DEBTOR.

Chapter 7
Case No. 11-11194-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matters before the Court are the "Motion To Avoid Judicial Lien Pursuant to 11 U.S.C. § 522(f)(1)(A) and MLBR 4003-1(a)" (the "Motion to Avoid Writ of Attachment"), the "Motion to Avoid Judicial Lien Execution Pursuant to 11 U.S.C. § 522(f)(1)(A) and MLBR 4003-1(a)" (the "Motion to Avoid Execution", collectively, the "Motions to Avoid Judicial Liens") filed by the debtor, Charles F. Andris (the "Debtor"), "Edward L. Kilwein [sic] Jr.'s Objection to Motion to Avoid Judicial Lien" (the "Objection to Motion to Avoid Writ of Attachment"), and "Edward L. Kilwein [sic] Jr.'s Objection to Motion to Avoid Judicial Lien Execution" (the "Objection to Motion to Avoid Execution," collectively, the "Objections") filed by creditor Edward L. Kilwien, Jr. ("Kilwien"). Through his motions, the Debtor seeks to avoid two judicial liens held by Kilwien to the extent that they impair his homestead exemption. Kilwien objects, contending that the Debtor's homestead exemption is invalid. For the reasons set forth below, I will overrule the Objections and grant the Motions to Avoid Judicial Liens.

**II. BACKGROUND**

The facts necessary to decide this matter are undisputed. The Debtor and Patricia Winters-Andris ("Winters-Andris") married on November 14, 1987. On November 15, 1996,

1

they acquired, and now jointly own, real property located at 79 Trotters Lane in Marston Mills, Massachusetts (the "Property"). On December 10, 1996, the Debtor recorded a declaration of homestead pursuant to Mass. Gen. Laws ch. 188, § 1 (the "Homestead Statute") with respect to the Property (the "1996 Declaration").

In January 2003, the Debtor and Winters-Andris separated, but did not divorce. The Debtor has not lived at the Property since the separation, but Winters-Andris and the couple's youngest daughter have continued to live at the Property without interruption. Nevertheless, the Debtor asserts that he has kept a significant connection to the Property by virtue of his daughter living there and his performance of various maintenance and repair jobs.

Since the Debtor and Winter-Andris parted ways, the Property has become subject to several encumbrances. First, on January 10, 2007, PHH Mortgage Service recorded a mortgage securing an obligation in the amount of $122,609. Second, on January 23, 2007, the Barnstable Superior Court issued a writ of attachment on the Property in the amount of $70,000 in favor of Kilwien, which he recorded the same day. Third, Kilwien also obtained an execution in the amount of $156,659.37 from the Barnstable Superior Court on October 2, 2008, which he later recorded on October 15, 2008.

Winters-Andris recorded two subsequent declarations of homestead under the same section of the Homestead Statute with respect to the Property on January 10, 2003 (the "2003 Declaration") and February 2, 2007 (the "2007 Declaration"). Then, on February 11, 2011, the Debtor recorded a fourth declaration of homestead pursuant to Mass. Gen. Laws ch 188, § 1 with respect to the Property (the "2011 Declaration"). Although he did not occupy the Property at the time of the 2011 Declaration, the Debtor states that he intended the Property to be the primary residence of Winters-Andris and his daughter, while also believing that there was "a possibility

2

of reconciliation with his wife and [of] moving back" to the Property.[1] Kilwien disputes that the Debtor has any real intent to reconcile with his wife and return to the Property, asserting that he has lived with another woman since 2006 and has discussed the possibility of marriage with her.[2]

The Debtor filed a voluntary Chapter 7 petition on February 16, 2011.[3] On the Petition, he listed his street address as 60 Stoney Point Road, Cummaquid, Massachusetts and his mailing address as P.O. Box 145, Cummaquid, Massachusetts. Further, on the Statement of Financial Affairs filed by the Debtor on March 3, 2011, the Debtor indicated that he had not lived at any other address during the prior three years. Schedule A – Real Property ("Schedule A"), reflected that the only real property owned by the Debtor was the Property, for which he valued his interest at $137,500, and disclosed encumbrances in the amount of $279,268.37. On Schedule C – Property Claimed as Exempt ("Schedule C"), the Debtor claimed an exemption claimed in the Property pursuant to Mass. Gen. Laws ch. 188, § 1, but listed the value of the exemption as $0 (the "Exemption"). On Schedule D – Creditors Holding Secured Claims ("Schedule D"), he listed two secured creditors: PHH Mortgage Service, as the holder of a mortgage on the Property in the amount of $122,609, and Kilwien, as the holder of a judicial lien in the amount of $156,659.37. Kilwien's attachment was not reflected anywhere in the Debtor's schedules.

On June 1, 2011, the Property was appraised with a value of $268,000. On September 13, 2011, the Debtor then filed a Motion to Amend Schedules A, C, D and F to reflect the appraised value of the Property. On Amended Schedule A, he listed his interest in the Property

---

[1] Debtor Charles Andris' Brief in Support of a Valid Homestead Exemption, Docket No. 78 at ¶¶ 11, 13.

[2] Memorandum in Support of Edward L. Kilwien Jr.'s Objection to Motion to Avoid Judicial Lien Execution (Docket No. 53) and Motion to Avoid Judicial Lien (Docket No. 52), Docket No. 79 at ¶¶ 18-19.

[3] The Massachusetts Homestead Statute was substantially revised in 2010, and the new version came into effect on March 16, 2011. Because the Debtor filed his petition prior to the effective date and rights to exemptions are fixed as of the date of the petition, *see* 11 U.S.C. § 522(b)(3)(A), the revised statute does not apply to this case. Therefore, all references to Mass. Gen. Laws ch. 188, § 1 *et seq.* shall refer to the version that was in effect on February 16, 2011.

as $134,000, or one-half of the $268,000 value, and reduced the secured liens against the property to $122,609. On amended Schedule C, the Debtor increased the amount of the Exemption from $0 to $145,391. Consistent with his change to Schedule A, he then removed Kilwien as a secured creditor from Amended Schedule D, and added him to Amended Schedule F – Creditors Holding Unsecured Nonpriority Claims ("Schedule F") as an unsecured creditor with one claim in the amount of $70,000 and another in the amount of $156,659.37.

On November 8, 2011, the Debtor filed the Motions to Avoid Judicial Liens, seeking to avoid both the attachment and execution to the extent that they impaired the Exemption. Kilwien filed the Objections on November 29, 2011, contesting the validity of the Exemption.[4] I held a hearing on December 2, 2011, at which time I took the matter under advisement and ordered the parties to file supporting briefs.

### III. POSITIONS OF THE PARTIES

<u>The Debtor</u>

The Debtor begins by noting that the Homestead Statute is to be construed liberally and is designed to protect a family's home from creditors. While he concedes that he did not live at the Property when he recorded the 2011 Declaration, he maintains that he intended to live there in the future and would have but for his separation from his wife. The Debtor further contends that he has complied with the Homestead Statute because he and Winters-Andris remain married and are therefore members of the same family, his wife and child's occupancy of the Property has been continuous, and his connections to the Property are significant. In support, he cites *In re Tofani*,[5] a case where Judge Somma found that a debtor satisfied the "intent to occupy

---

[4] Kilwien does not advance any other argument in opposition to the Motions to Avoid Judicial Liens.

[5] *In re Tofani*, 365 B.R. 338 (Bankr. D. Mass. 2007).

requirement" of the Homestead Statute by virtue of his strong and continuing connection to the residence. Alternatively, the Debtor argues that if the 2011 Declaration is invalid, he may nonetheless rely on the 2007 Declaration, which he asserts would not have been terminated by the subsequent invalid declaration.

### Kilwien

Kilwien argues that the Motions to Avoid Judicial Liens should be denied because the Debtor is not entitled to the Exemption in the Property in light of his failure to occupy or intend to occupy the Property at the time of the 2011 Declaration. In support, Kilwien states that the Debtor has not lived at the Property for eight years and has no intent to return based upon the fact that he is living with another women, with whom he has considered marriage. Moreover, relying on *In re Gunnison*,[6] he asserts that neither the 2003 Declaration nor the 2007 Declaration were effective to terminate the homestead created by the 1996 Declaration because one spouse cannot unilaterally terminate a prior homestead recorded by the other spouse. In the event that I disagree, Kilwien argues that the 2011 Declaration, which he maintains is invalid, was nonetheless sufficient to terminate the estate created by either the 2007 Declaration or 1996 Declaration.

## IV. DISCUSSION

Section 522(f) of the Bankruptcy Code provides that a debtor may avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . ."[7] Pursuant to Fed. R. Bankr. P. 4003(d), "a creditor may object to a motion filed under § 522(f) by challenging the validity of the

---

[6] *In re Gunnison*, 397 B.R. 186 (Bankr. D. Mass. 2008).

[7] 11 U.S.C. § 522(f)(1).

exemption asserted to be impaired by the lien."[8] This is precisely the procedural posture adopted by Kilwien and therefore, he has the initial burden of proving the Exemption is not properly claimed.[9]

Under 11 U.S.C. § 522(b), "an individual debtor may exempt from property of the estate the property listed in . . . paragraph (3) of this subsection," which allows a debtor to claim the exemptions provided for under applicable state law.[10] In Massachusetts, the Homestead Statute as in effect on the petition date provides that "[a]n estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home . . . who occupy or intend to occupy said home as a principal residence."[11] To reiterate, the statutory requirement is that the declarant, at the time the declaration is recorded, "occupy or intend to occupy" the principal residence.[12]

Moreover, pursuant to Mass. Gen. Laws ch. 188, § 1, "only one owner may acquire an estate of homestead in any such home for the benefit of his family."[13] "For the purposes of [the Homestead Statute], the word "family" shall include . . . a husband and wife and their

---

[8] Fed. R. Bankr. P. 4003(d).

[9] Fed. R. Bankr. P. 4003(c) ("The objecting party has the burden of proving that the exemptions are not properly claimed.").

[10] 11 U.S.C. § 522(b)(1), (3)(A).

[11] Mass. Gen. Laws ch. 188, § 1.

[12] *In re Genzler*, 426 B.R. 407, 417-418 (Bankr. D. Mass. 2010); *In re Tofani*, 365 B.R. at 345; *In re Roberts*, 280 B.R. 540, 547 (Bankr. D. Mass. 2001).

[13] Mass. Gen. Laws ch. 188, § 1.

children. . . ."[14] It is well-established in this district that separated spouses who have not yet divorced are still a family.[15]

Courts in this district have uniformly recognized that the Homestead Statute provides that an estate of homestead can be terminated one of three ways.[16] Mass Gen. Laws ch. 188, § 7 provides that:

> An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods:--(1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.[17]

Additionally, under Mass. Gen. Laws ch. 188, § 2, "[t]he acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate."[18]

This, however, does not end the inquiry into whether an estate of homestead is effectively terminated. In *Dwyer v. Cempellin*,[19] the Massachusetts Supreme Judicial Court held that once an owner records a valid declaration on a home, "any subsequent recording [on the same home] would be entirely ineffective without a release of the first."[20] Nevertheless, sequential

---

[14] *Id.*

[15] *See In re Gunnison*, 397 B.R. at 190 ("While the Debtors may be separated in fact, they remain legally married and thus are a single 'family' for purposes of the Homestead Statute."); *In re Taylor*, 280 B.R. 294, 298 (Bankr. D. Mass. 2002) (finding separated spouses still legally married to be in the same "family" for purposes of Mass. Gen. Laws ch. 188, § 1.); *see also In re Cassese*, 286 B.R. 472, 475 (Bankr. D. Mass. 2002) (finding that upon divorce, former spouses were no longer in the same "family" for purposes of Mass. Gen. Laws ch. 188, § 1).

[16] *In re Leigh*, 307 B.R. 324, 329-330 (Bankr. D. Mass. 2004); *In re Taylor*, 280 B.R. at 297; *In re Webber*, 278 B.R. 294, 298 n.4 (Bankr. D. Mass. 2002); *In re Garran*, 274 B.R. 570, 574 (Bankr. D. Mass. 2002).

[17] Mass. Gen. Laws ch. 188, § 7.

[18] Mass. Gen. Laws ch. 188, § 2.

[19] *Dwyer v. Cempellin*, 424 Mass. 26 (1996).

[20] *Id.* at 30. *See In re Gunnison*, 397 B.R. at 191; *In re Sebio*, 237 B.R. 1, 3 (Bankr. D. Mass. 1999); *but see Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1 (1st Cir. 2003) (holding that a Chapter 7 debtor's homestead

7

declarations of homestead on the same property by the *same* declarant will terminate the prior estate of homestead.[21]

With this backdrop in place, I conclude that the Objections are ill taken, but that it is ultimately unnecessary to determine which declaration forms the basis of the Exemption. To start, I concur with Kilwien that the 2003 Declaration and the 2007 Declaration recorded solely by Winters-Andris were not effective to discharge the homestead created by the 1996 Declaration recorded solely by the Debtor, under the rule set forth in *Dwyer v. Cempellin*. This, however, is where I part company with his argument.

Assuming, *arguendo*, that the 2011 Declaration is valid, it discharged the estate created by the 1996 Declaration, properly forming the basis for the Exemption and I need go no further. If, however, Kilwien is correct and the Debtor lacked the requisite intent to occupy the Property at the time he recorded the 2011 Declaration, a finding that would certainly require a trial and submission of evidence, then the 2011 Declaration would be invalid and, by definition, could not have created a new claim of homestead to discharge the prior one created by the 1996 Declaration.

In effect, Kilwien seeks to have his cake and eat it too by asserting that the recordation of the 2011 Declaration, even if invalid, must have terminated any prior estate. I find such an argument at odds with both the statutory text which speaks of "[t]he acquisition of a new estate or claim of homestead,"[22] and the Supreme Judicial Court's directive that the exemption laws "should be liberally construed to comport with their beneficent spirit of protecting the family

---

under Mass. Gen. Laws ch. 188, § 1A was terminated by his non-debtor spouse's subsequent declaration of a homestead under Mass. Gen. Laws ch. 188, § 1 because it created a new claim of homestead).

[21] *In re Leigh*, 307 B.R. at 330; s*ee In re Gunnison*, 397 B.R. at 191.

[22] Mass. Gen. Laws ch. 188, § 2.

home,"[23] and predict that the Supreme Judicial Court would reject it.[24] Therefore, the Exemption is properly supported and it is unnecessary to determine whether the 1996 Declaration or the 2011 Declaration forms its basis.

Turning now to the question of lien avoidance, 11 U.S.C. § 522(f)(2)(A) provides the following formula to determine whether a debtor's exemption is impaired:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.[25]

In the Motion to Avoid Writ of Attachment, the Debtor applied the formula as follows:

> Therefore, with respect to the subject lien of Edward L. Kilwien, Jr. totaling $70,000, the formula under 11 U.S.C. § 522(f)(2)(A) provides: A lien should be considered to impair an exemption to the extent that the sum of:
> (i)  The subject lien ($70,000.00);
> (ii) All other secured liens on the property ($122,609.00);[26]
> (iii) The amount that the debtor could claim if there were no liens on the property ($145,391.00) using the Massachusetts exemptions from Schedule C[27]

---

[23] *Dwyer v. Cempellin*, 424 Mass. at 29-30.

[24] *See In re Miller*, 113 B.R. 98, 101 (Bankr. D. Mass.1990); *see also In re Garran*, 338 F.3d at 6 (recognizing that where Massachusetts courts have not yet addressed an issue, the court must predict how the Massachusetts Supreme Judicial Court would interpret the statute); *Caron v. Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir. 1996) (holding that a federal court must decide an issue regarding the interpretation of a state law according to its anticipation of how the highest state court would hold); *Hildebrandt v. Collins (In re Hildebrandt)*, 320 B.R. 40 (B.A.P. 1st Cir. 2005); *In re Desroches*, 314 B.R. 19 (Bankr. D. Mass. 2004).

[25] 11 U.S.C. § 522(f)(2)(A).

[26] 11 U.S.C. § 522(f)(2)(A)(ii) states that "all other liens on the property" shall be included in the calculation, and therefore the Debtor could have also included Kilwien's $156,659.37 execution as part of the first calculation. However, his failure to do so only prejudices him, because it lowers the amount by which the sum exceeds the value of the Property.

[27] While the Debtor only claimed an exemption in the amount of $145,391 on Schedule C, 11 U.S.C. § 522(f)(2)(A)(iii) states that for the purposes of the lien avoidance formula, a debtor may use the amount of the exemption that he *could* claim. Here, that amount is $500,000, pursuant to Mass. Gen. Laws ch 188, § 1. Again, the fact that the Debtor used a lesser amount in applying the 11 U.S.C. § 522(f)(2)(A) formula only prejudices him.

[e]xceeds the value of the Debtor's property ($268,000.00). The total of the aforementioned liens ($338,000.00) exceeds the value of the Debtor's property ($268,000) by $70,000.00.[28]

Similarly, the Debtor applied the formula to avoid Kilwien's execution, stating:

> Therefore, with respect to the subject lien Execution of Edward L. Kilwien, Jr. totaling $156,659.37, the formula under 11 U.S.C. § 522(f)(2)(A) provides: A lien should be considered to impair an exemption to the extent that the sum of:
> (i)   The subject lien ($156,659.37);
> (ii)  All other secured liens on the property ($122,609.00);
> (iii) The amount that the debtor could claim if there were no liens on the property ($145,391.00) using the Massachusetts exemptions from Schedule C
>
> [e]xceeds the value of the Debtor's property ($268,000.00). The total of the aforementioned liens ($424,659.37) exceeds the value of the Debtor's property ($268,000.00) by $156,659.37.[29]

Based upon these calculations, which I note that Kilwien has not contested, both the attachment and the execution are fully avoidable.

---

[28] Motion to Avoid Writ of Attachment, Docket No. 52 at ¶¶ 9-10.

[29] Motion to Avoid Execution, Docket No. 53, ¶¶ 9-10.

## V. CONCLUSION

In light of the foregoing, I will enter an order overruling the Objections and granting the Motions to Avoid Judicial Liens.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: April 10, 2012

Counsel Appearing:

    Ann Brennan, Ann Brennan Law Offices, Rockland, MA,
        for Edward L. Kilwien, Jr.
    Peter M. Daigle, The Law Offices of Peter M. Daigle, P.C., Centerville, MA,
        for the Charles F. Andris